The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

James Oliver NEWTON, Jr., a/k/a John Miller, a/k/a Gregory Islamoff, a/k/a Robert Smith, Defendant–Appellee.

No. 87SA116.

Supreme Court of Colorado, En Banc.

Nov. 28, 1988.

James F. Smith, Dist. Atty., Michael J. Milne, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, State Public Defender, Daniel W. Edwards, Deputy State Public Defender, Denver, for defendant-appellee.

QUINN, Chief Justice.

The People appeal from a district court judgment which dismissed three felony charges against the defendant, James Oliver Newton, Jr., pursuant to the Interstate Agreement on Detainers (IAD), § 24-60-501, 10B C.R.S. (1988).[1] The district court ruled that Newton had not been brought to trial within 180 days after he made a formal request for final disposition of the one charge on which a detainer had been filed and, on that basis, dismissed that charge and the other two charges filed against him. We affirm that part of the judgment dismissing the charge on which the detainer had been filed, and reverse that part of the judgment dismissing the two other charges on which detainers had not been filed.

## I.

The facts are not in dispute. On July 2, 1985, the People filed a complaint in the Adams County Court charging Newton with felony-theft of rental property, § 18-4-402(1)(b), 8B C.R.S. (1986). The charging document alleged that between March 30 and July 2, 1985, Newton knowingly failed to reveal the whereabouts of or to return a video tape recorder and video tape movies within 72 hours after the expiration of the rental agreement on the property. On or about January 13, 1986, the People also filed a separate complaint in the Adams County Court, charging the defendant with first degree aggravated motor vehicle theft, § 18-4-409, 8B C.R.S. (1986), and felony-fraud by check, § 18-5-205, 8B C.R.S. (1986), both of which allegedly were committed on October 14, 1985.

Because Newton was serving a sentence in Lincoln, Illinois when the Adams County charges were filed, the district attorney, pursuant to the IAD, filed a detainer with the Illinois correctional facility. The detainer was filed on the basis of the theft of rental property charge. Article III(a) of the IAD provides that if the out-of-state prisoner makes a request for final disposition of the charge, he must be brought to trial within 180 days after he causes the request to be delivered to the prosecuting attorney and the appropriate court of the prosecutor's jurisdiction, unless the court grants a necessary and reasonable continuance of the trial. § 24-60-501(III)(a), 10B

---

1. The prosecution filed this appeal pursuant to section 16-12-102, 8A C.R.S. (1986), which authorizes a prosecutorial appeal from "any decision of the trial court in a criminal case upon any question of law" in accordance with "applicable rule of the supreme court of Colorado."

When this appeal was filed, C.A.R. 4(b)(2) stated that a prosecutorial appeal authorized by statute shall be filed in the supreme court. Effective August 1, 1988, C.A.R. 4(b)(2) has been amended and now provides that such appeals shall be filed in the court of appeals.

C.R.S. (1988). Newton made a written request for speedy disposition of the charge on July 7, 1986, and his request was received by the Adams County District Attorney's Office and the Adams County Court on or about July 28, 1986.[2] Newton was thereafter returned to Colorado pursuant to the IAD and appeared in the county court on both criminal complaints on August 20, 1986. The prosecutor on this occasion informed the court that Newton was in Colorado pursuant to an interstate detainer. The court advised Newton of all three charges filed against him and appointed the Public Defender's Office to represent him.

A preliminary hearing was conducted on both cases on September 25, 1986. At this hearing neither the prosecutor nor defense counsel advised the court of Newton's detainer status. The county court found probable cause on all charges and bound the two cases over for proceedings in the district court.

On October 26, 1986, Newton was arraigned in the district court on both cases and entered pleas of not guilty. The district court was not advised of Newton's detainer status, and no request was made for an expedited trial date. The court set the theft of rental property charge for trial on February 17, 1987, and the other case, which involved the charges of aggravated theft of a motor vehicle and fraud by check, was set for trial on February 19, 1987.

On February 5, 1987, Newton filed motions to dismiss, claiming that he had complied with the IAD by requesting a speedy disposition but was not being accorded a speedy trial.[3] The court conducted hearings on the motion, and on March 3, 1987, dismissed all charges. The court ruled that, although defendant's speedy trial rights under the IAD may be voluntarily waived, Newton's silence in regard to the setting of the belated trial dates did not constitute a voluntary waiver.

The People in this appeal challenge the judgment of dismissal on two grounds: first, that Newton had an obligation to object to the trial date of February 17, 1987, in order to preserve his speedy trial rights under the IAD, and that by not objecting the speedy trial period was extended to the actual date of trial; and second, that, because the charges of aggravated motor vehicle theft and fraud by check were not included in the detainer lodged against the defendant, the district court erred in applying the 180-day speedy trial requirement of the IAD to non-detainer charges.

Before addressing these claims, it will be helpful to review the statutory and decisional law pertaining to the speedy trial requirements of the IAD, since it is that

**2.** There are some discrepancies in the record as to the date when the defendant's request for final disposition was received. In its oral ruling from the bench on March 3, 1987, the district court listed the date of receipt as July 22, 1986. Later, in its written ruling on the same day, the court listed the date as July 28, 1986. The outcome of this case is not affected by these slight differences.

**3.** The defendant's motion to dismiss was apparently filed only in the theft of rental property case, but the hearing on the motion involved both cases, as did the district court's ruling. In arguments to the district court, the prosecution and defense were somewhat confused over the speedy trial period applicable to this case, sometimes asserting that the 180-day period of Article III controls and at other times claiming that the 120-day period of Article IV applies.

Article III applies in those situations where the out-of-state prisoner has requested final disposition of the charge which is the subject of the detainer. Since the defendant's presence in Colorado was obtained as a result of a detainer on which the defendant requested final disposition, the controlling speedy trial period is the 180-day period in Article III—that is, within 180 days after the out-of-state prisoner causes to be delivered to the prosecuting officer and the court a written request for final disposition of the charge, unless the court grants a necessary or reasonable continuance. Article IV, in contrast, applies in situations where the state has lodged a detainer against an out-of-state prisoner and the prisoner has not requested final disposition of the charge underlying the detainer. In that situation, the state lodging the detainer may still obtain temporary custody of the prisoner, but must bring him to trial within 120 days "of the arrival of the prisoner in the receiving state," unless the court grants a necessary or reasonable continuance. § 24-60-501(IV)(c), 10B C.R.S. (1988).

body of law which provides the framework for our resolution of this appeal.

## II.

■ Colorado has enacted several statutes in implementation of a defendant's right to a speedy trial. *Interstate* detainer cases, which involve prisoners who are confined in another state and are charged with a crime in Colorado, are governed by the IAD. § 24–60–501, 10B C.R.S. (1988). "The purpose of the IAD is 'to encourage the expeditious and orderly disposition of ... charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints' so that any uncertainty about the prisoner's status will be dispelled, and rehabilitation and treatment can proceed unhindered." *Dodson v. Cooper*, 705 P.2d 500, 502 (Colo.1985) *cert. denied* 474 U.S. 1084, 106 S.Ct. 857, 88 L.Ed.2d 896 (1986). Article III(a) of the IAD requires the prosecution to try a prisoner within 180 days after receipt of the prisoner's request for final disposition, unless the court having jurisdiction of the matter grants a necessary or reasonable continuance.

*Intrastate* detainer cases, which involve prisoners who are confined in a Colorado correctional facility and have a Colorado charge pending against them, are governed by the Uniform Mandatory Disposition of Detainer Act (UMDDA), §§ 16–14–101 to –108, 8A C.R.S. (1986). The UMDDA contains a 90 day speedy trial period which commences upon receipt by the court and the district attorney of the prisoner's request for final disposition. § 16–14–104, 8A C.R.S. (1986). Finally, other criminal cases not involving detainers are subject to Colorado's speedy trial statute, which provides that, in the absence of a waiver or extension of the speedy trial period, a trial must commence within six months after the entry of a not guilty plea. § 18–1–405(1), 8B C.R.S. (1986).

■ Although these statutes apply to different situations, they nonetheless "reflect the same policy of assuring speedy trials" and, therefore, "the enunciated principles for one can be applied to the others unless the provisions conflict." *People v. Swazo*, 199 Colo. 486, 489, 610 P.2d 1072, 1074 (1980); *see also People v. Campbell*, 742 P.2d 302, 306 (Colo.1987). For example, we have applied rules involving speedy trial waivers in non-detainer cases to the IAD, *see People v. Sevigny*, 679 P.2d 1070 (Colo.1984), as well as to the UMDDA, *Chambers v. District Court*, 180 Colo. 241, 504 P.2d 340 (1972), and have also utilized principles applicable to the IAD in resolving claims under the UMDDA, *People v. Higinbotham*, 712 P.2d 993 (Colo.1986). In cases involving *interstate* detainers, the provisions of the IAD are mandatory and will obviously control over any conflicting provisions in either the UMDDA or the general speedy trial statute. *See United States v. Mauro*, 436 U.S. 340, 363–64, 98 S.Ct. 1834, 1848–49, 56 L.Ed.2d 329, 349 (1978); *Hughes v. District Court*, 197 Colo. 396, 401, 593 P.2d 702, 705 (1979).

■ The provisions of the IAD are activated when a state charges a person imprisoned in another state with a crime and files a detainer with the official having custody of the prisoner. *Mauro*, 436 U.S. at 343, 98 S.Ct. at 1838, 56 L.Ed.2d at 336; *Dodson*, 705 P.2d at 502. The prisoner has the right to make a request for speedy disposition, thereby waiving extradition on the charges underlying the detainer and consenting to appear in court as required. § 24–60–501(III)(e), 10B C.R.S. (1988). The prisoner's act in causing his request for final disposition to be delivered "to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction" triggers the running of the 180–day speedy trial period in Article III(a) of the IAD.[4] Once the speedy

---

4. Article III(a) of the IAD, § 24–60–501(III)(a), 10B C.R.S. (1988), states:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprison-

ment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered

trial period has been properly activated by the prisoner, the burden of compliance is on the district attorney and the court. *E.g., People v. Allen,* 744 P.2d 73, 77 (Colo. 1987); *Sevigny,* 679 P.2d at 1074. In the event the criminal charges on the basis of which the detainer has been lodged are not brought to trial within 180 days of the receipt of the prisoner's request for final disposition, then in the absence of "any reasonable or necessary continuance" of the trial, § 24–60–501(III)(a) 10B C.R.S. (1988), or alternatively in the absence of a "tolling" of the speedy trial period due to the prisoner's inability to stand trial, § 24–60–501(VI)(a), 10B C.R.S. (1988), Article V(c) of the IAD requires the court to enter an order dismissing with prejudice those charges underlying the detainer without regard to any showing of prejudice by the prisoner. *See, e.g., Sevigny,* 679 P.2d at 1074; *Hughes,* 197 Colo. at 402, 593 P.2d at 706.

While the IAD expressly authorizes "any necessary or reasonable continuance" of the trial and provides for the "tolling" of the speedy trial period, the IAD does not address whether a defendant has an obligation to object to a trial setting beyond the speedy trial period in order to preserve his speedy trial rights. We addressed this issue in *People v. Sevigny,* and held that a waiver of speedy trial rights under the IAD must be voluntary, but that, since IAD rights are statutory in origin, a waiver need not comport with the high standard of waiver applicable to basic constitutional rights—that is, a knowing and intentional relinquishment of the right. 679 P.2d at 1075. Drawing on the standard of waiver developed in cases involving non-detainer speedy trial rights, *see People v. Gallegos,* 192 Colo. 450, 560 P.2d 93 (1977); *Harrington v. District Court,* 192 Colo. 351, 559 P.2d 225 (1977), we concluded in *Sevigny* that a voluntary waiver in the context of IAD speedy trial rights "requires a showing of record that the defendant or his

to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or

attorney freely acquiesced in a trial date beyond the speedy trial period," and that "mere silence, by itself, does not prove a waiver." *Sevigny,* 679 P.2d at 1075. We adhered to this same standard of waiver in *People v. Allen,* 744 P.2d at 75–76, noting that some form of affirmative conduct by the defendant or defense counsel—such as a request for a trial date beyond the speedy trial period or some other request for treatment inconsistent with the IAD—is required for a waiver of speedy trial rights under the IAD.

Both *Sevigny* and *Allen* involved offenses allegedly committed prior to July 1, 1985. That date is significant because in 1985 the Colorado General Assembly amended section 18–1–405 of the general speedy trial statute by adding subsection (5.1), which was made expressly applicable to all crimes committed on or after July 1, 1985, ch. 136, sec. 12, 1985 Colo.Sess.Laws 621, 624, and provides as follows:

If a trial is offered by the court to a defendant who is represented by counsel and neither the defendant nor his counsel expressly objects to the offered date as being beyond the time within which such trial shall be had pursuant to this section, then the period within which the trial shall be had is extended until such trial date and may be extended further pursuant to any other applicable provisions of this section.

The applicability of this statute to the IAD is one of the questions which we must resolve in this case.

### III.

■ We first address the People's argument with respect to the dismissal of the charge of theft of rental property. The People's argument proceeds as follows: pursuant to section 18–1–405(5.1) (the 1985 amendment to the general speedy trial statute), the defendant had an obligation to object to a trial setting beyond the 180–day speedy trial period of the IAD, and that,

complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

because he failed to so object, the speedy trial period was extended by virtue of section 18–1–405(5.1) to the actual trial date of February 17, 1987, with the result that the district court erred in dismissing the theft of rental property charge.

There is no question that the 180–day speedy trial period for the charge of theft of rental property began to run as of July 28, 1986, the date on which the district attorney's office and the Adams County court received the defendant's written request for a final disposition of that charge. Once the speedy trial period had been triggered by the receipt of the defendant's written request for final disposition, the burden of complying with the speedy trial provisions of the IAD was on both the district attorney and the court. *Allen*, 744 P.2d at 76–77; *Sevigny*, 679 P.2d at 1074. Although neither the defendant nor his attorney objected to the scheduled trial date of February 17, 1987, the record is barren of any showing that the defendant or his attorney requested a trial date beyond the speedy trial period or took some other affirmative action inconsistent with the speedy trial mandate of the IAD. What the record shows is nothing more than silence in the face of a belated trial setting.[5]

We acknowledge that under our decisions in *Sevigny*, 679 P.2d 1070, and *Allen*, 744 P.2d 73, the silence of the defendant and his attorney would not be sufficient to constitute a waiver of his right to a speedy trial under the IAD. Both *Allen* and *Sevigny*, however, involved charges that were based on crimes committed prior to July 1, 1985, the effective date of the 1985 amendment to the general speedy trial statute, § 18–1–405(5.1), 8B C.R.S. (1986). Section 18–1–405(5.1) applies to "all acts committed on or after" July 1, 1985, ch. 136, sec. 12, 1985 Colo.Sess.Laws 621, 624, and states that the period within which the trial must be held is extended to the scheduled trial date when neither the defendant nor defense counsel expressly objects to a trial

setting beyond the speedy trial period. By virtue of the 1985 amendment to the general speedy trial statute, the silence of a defendant or defense counsel in the face of a belated trial setting serves to extend the speedy trial period to the scheduled trial date.

▮ The initial question we must decide, therefore, is whether section 18–1–405(5.1) applies to the IAD or, instead, is basically inconsistent with and hence inapplicable to the speedy trial provisions of the IAD. The obvious purpose of section 18–1–405(5.1) is to impose on the defendant and defense counsel an affirmative obligation to object to a trial setting beyond the speedy trial period, a matter about which the IAD is silent. In light of the IAD's silence on that matter, we know of no reason why section 18–1–405(5.1) should not be applied to proceedings under the IAD with respect to charges based on criminal acts committed on or after July 1, 1985. Indeed, imposing this obligation on the defendant and defense counsel provides an added safeguard to the implementation of the speedy trial right created by the IAD and is patently consistent with its goal of securing "the expeditious and orderly disposition of [untried] charges." § 24–60–501(I), 10B C.R.S. (1988). We thus conclude that section 18–1–405(5.1) applies to a defendant's right to a speedy trial under the IAD.

We must next determine whether section 18–1–405(5.1) is applicable to the charge of theft of rental property which, according to the charging document, occurred in Adams County, Colorado, from "March 30, 1985 to July 2, 1985." Section 18–4–402(1)(b), 8B C.R.S. (1986), states that a person commits theft of rental property if he:

[h]aving lawfully obtained possession for temporary use of the personal property of another which is available only for hire knowingly fails to reveal the whereabouts of or to return said property to

---

**5.** In ruling on the motion to dismiss, the district court expressly found that neither the defendant nor defense counsel took any affirmative action to manifest approval of the trial date. Since the record supports the district court's finding in

this respect, we will not overturn that finding on appellate review. *See People v. Hampton,* 758 P.2d 1344, 1348 (Colo.1988); *People v. Quezada,* 731 P.2d 730, 732 (Colo.1987); *People v. Raffaelli,* 647 P.2d 230, 236 (Colo.1982).

the owner thereof or his representative or to the person from whom he has received it within seventy-two hours after the time at which he agreed to return it. The gist of theft of rental property is the offender's knowing failure to disclose the whereabouts of or to return the rental property within 72 hours after the time at which the return was due. *See People v. Moody,* 674 P.2d 366, 368 (Colo.1984). Although for purposes of prosecution the crime of theft of rental property may be considered completed when the offender has knowingly failed to disclose the location of or to return the rental property within 72 hours following the agreed time of return, the crime charged in this case was a continuing offense in the sense that it commenced on March 30, 1985, when, upon expiration of the 72–hour statutory period, the defendant failed to disclose the whereabouts of or to return the videotape recorder and videotape movies to the lessor and continued thereafter until July 2, 1985.

 Section 18–1–405(5.1) is silent on whether it was intended to apply to crimes committed prior to but continuing beyond July 1, 1985, the effective date of the statute. This silence creates an ambiguity with respect to the reach of the statute. When, as here, an ambiguity in a criminal statute renders it capable of alternative and conflicting constructions, it is appropriate to resort to the rule of lenity in an effort to arrive at an appropriate interpretation. *See, e.g., People v. Russo,* 713 P.2d 356, 364 (Colo.1986); *People v. Roybal,* 618 P.2d 1121, 1125 (Colo.1980); *Cokley v. People,* 168 Colo. 280, 283–84, 450 P.2d 1013, 1014–15 (1969). The rule of lenity requires that in resolving such a statutory ambiguity the construction that favors the liberty interests of the accused should be adopted. *S.G.W. v. People,* 752 P.2d 86, 88 (Colo.1988); *People v. Lowe,* 660 P.2d 1261, 1267–68 (Colo.1983); *People v. Cornelison,* 192 Colo. 337, 340, 559 P.2d 1102, 1105 (1977). Relying on the rule of lenity, therefore, we hold that the 1985 amendment to the speedy trial statute, which took effect on July 1, 1985, is not applicable to the theft of rental property initially committed on March 30, 1985, and

continuing until July 2, 1985. The district court, therefore, properly dismissed the charge of theft of rental property as a result of the state's failure to bring the defendant to trial within the 180–day period mandated by Article III(a) of the IAD.

IV.

 We next consider the People's claim in regard to the dismissal of the charges of aggravated motor vehicle theft and fraud by check. The People argue that the district court erred in applying the speedy trial provisions of the IAD to these charges because neither of them was listed in the detainer filed against the defendant. We agree with the People's claim.

The speedy trial provisions of the IAD clearly state that the dismissal remedy for exceeding the speedy trial limitations applies only to those charges which underlie the detainer filed against the prisoner. Article V(c) of the IAD states, in pertinent part, that

> in the event that an action on the indictment, information, or complaint *on the basis of which the detainer has been lodged* is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice....

§ 20–60–501(V)(c), 10B C.R.S. (1988) (emphasis added). In *People v. Greenwald,* 704 P.2d 312 (Colo.1985), we considered the effect of the state's failure to comply with the 120–day speedy trial period of Article IV of the IAD as to non-detainer charges. In *Greenwald,* the defendant had been charged with the crime of felony theft in the Jefferson County District Court and with felony theft and forgery in the Arapahoe County District Court. After both cases were filed, the defendant left Colorado and was subsequently convicted and sentenced in Oregon for forgery. While the defendant was confined in an Oregon correctional facility, the District Attorney of Jefferson County lodged a detainer and requested temporary custody of the defendant pursuant to Article IV of the IAD,

which requires that the trial of the out-of-state prisoner commence within 120 days of his arrival in the receiving state. *See* note 3, *supra.* After the defendant's arrival in Colorado for trial of the Jefferson County charges, the Arapahoe County District Attorney secured the defendant's presence in the Arapahoe County District Court, pursuant to a writ of habeas corpus *ad prosequendum,* to answer the charges pending there. The defendant then filed a motion to dismiss the Arapahoe County charges because he was not brought to trial within 120 days of his arrival in Colorado, as required by Article IV of the IAD. The Arapahoe County District Court granted the motion, and we reversed, stating:

> We view the language of article IV(c), requiring trial within 120 days "[i]n respect of any proceeding made possible by this article," to relate only to the charges underlying the detainer which made the proceedings possible. Such conclusion is supported by the language of article IV(b), recognizing that separate detainers may be filed against a prisoner by officials of a foreign jurisdiction. Therefore, we conclude that the Arapahoe County charges were not subject to the 120–day requirement of article IV(c) because those charges did not underlie a detainer previously lodged against the defendant.
>
> This construction also accords with one of the purposes of the IAD. The IAD is designed in part to benefit states agreeing to accept its provisions by expediting the difficult process of disposing of criminal charges pending against persons who are no longer in the jurisdiction of the forum.... In view of the language of this article and this purpose of the IAD, we construe article IV(c) as refer-

ring to proceedings relating to the charges upon which the detainer activating the provisions of the IAD was based. A contrary construction would create further difficulties in resolving untried charges pending against absent defendants.

704 P.2d at 316 (citations and footnote omitted); *cf. United States v. Sanders,* 669 F.2d 609 (9th Cir.), *cert. denied* 456 U.S. 964, 102 S.Ct. 2044, 72 L.Ed.2d 489 (1982) (speedy trial time limit of Article III(a) applies only to charges pending at time detainer is filed, not to later charges for related offenders); *Brown v. District Court,* 194 Colo. 225, 571 P.2d 1091 (1977) (bringing defendant into state for disposition of charges underlying a detainer does not defeat jurisdiction over defendant for trial on other charges); *Ramirez v. State,* 455 N.E.2d 609 (Ind.Ct.App.1983), *aff'd by an equally divided court sub nom. Ramirez v. Indiana,* 471 U.S. 147, 105 S.Ct. 1860, 85 L.Ed.2d 113 (1985) (defendant brought into state for trial on charges underlying a detainer may also be tried on non-detainer charges).

Except for the fact that Greenwald's presence in Colorado was obtained under Article IV of the IAD, rather than Article III, we believe that *Greenwald* is analytically identical to and provides the controlling precedent for the instant case. Since the charges of aggravated motor vehicle theft and fraud by check did not underlie the detainer placed against the defendant, the speedy trial provisions of the IAD are not applicable to those charges.[6]

The non-detainer charges fall within the purview of Colorado's general speedy trial statute, § 18–1–405, 8B C.R.S. (1986), which provides that a defendant must be

---

**6.** We recognize that Article V(d) of the IAD provides that

> [t]he temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.

While arguably there might be some situations in which a state would utilize an IAD detainer

on minor charges as a pretext for securing jurisdiction over the prisoner in order to file far more serious charges against him, we need not address here whether Article V(d) would support a dismissal of the non-detainer charges in that situation. *But see Brown v. District Court,* 194 Colo. 225, 571 P.2d 1091 (1977); *Ramirez v. State,* 455 N.E.2d 609 (Ind.Ct.App.1983) *aff'd by an equally divided court sub nom. Ramirez v. Indiana,* 471 U.S. 147, 105 S.Ct. 1860, 85 L.Ed.2d 113 (1985). In the instant case, both the detainer and non-detainer charges had been filed and were pending against the defendant prior to the

brought to trial on the charges within six months of the entry of a plea of not guilty. Since the defendant entered a plea of not guilty to these charges on October 16, 1986, the six-month speedy trial period commenced on that date and would not have expired until April 16, 1987. The defendant's scheduled trial of February 19, 1987, on these non-detainer charges was well within the six month speedy trial term. We therefore reverse that part of the district court's judgment dismissing the charges of aggravated motor vehicle theft and fraud by check.

The judgment is accordingly affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with the views herein expressed.

district attorney's initiation of IAD proceedings on the theft of rental property charge. Moreover, at no time did the defendant assert that Article V(d) required the dismissal of the non-detainer charges. Rather, the defendant's claim throughout this case is that once he was returned to Colorado pursuant to detainer, both the detainer and non-detainer charges were subject to the speedy trial period of the IAD.