23CA1466 Peo v Irvin 06-12-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1466
Arapahoe County District Court No. 18CR1458
Honorable Darren L. Vahle, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Marquise Antonio Irvin,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Esteban A. Martinez, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant

¶ 1 Defendant, Marquise Antonio Irvin, appeals the trial court's order denying his motions to dismiss his criminal charges under the Uniform Mandatory Disposition of Detainers Act (UMDDA), sections 16-14-101 to -108, C.R.S. 2024. We affirm.

## I. Background

¶ 2 In May 2018, the People charged Irvin with multiple felony counts stemming from an armed robbery and vehicle theft.

¶ 3 In February 2019, because Irvin was serving a prison sentence in an unrelated case, the Department of Corrections notified Irvin of the detainer lodged against him for the charges in this case by providing him with a written detainer notice and advisement of rights. The advisement explained how to request a final disposition of the detainer and the court's deadline to act after receiving a request. It also stated that, by signing the advisement, Irvin "acknowledge[d]" that he had "read" and "fully underst[oo]d" his UMDDA rights. Irvin signed the advisement and, later that month, filed it with the trial court alongside a request for final disposition of the detainer (UMDDA request).

¶ 4 After Irvin filed his UMDDA request, the court tried to hold a preliminary hearing — first in March and then in April. Irvin was

unable to attend the March hearing due to complications with the writ. Then, for reasons not relevant here, Irvin did not attend the April hearing. Because the parties disputed whether Irvin had waived his preliminary hearing by failing to attend the April hearing, the court set a status conference the following month to address the waiver issue.

¶ 5 This time, Irvin attended the May status conference. After hearing arguments from both sides, the court concluded that Irvin had not waived his preliminary hearing. In ruling that Irvin was entitled to a preliminary hearing, the court acknowledged that Irvin's actions affected the UMDDA request:

> The [People] can't be held to the speedy if [Irvin] won't come over. It's not . . . the [People's] fault if he wouldn't come over with regard to the detainer. So I'm interested to hear from the [People] and the [d]efense on the issue of the detainer at this point. I see[] them as different issues, the right to have the [preliminary hearing] and the detainer.[1]

¶ 6 The People argued that Irvin had "made a waiver of his detainer" by taking "steps to actively delay and refus[ing] to come to

---

[1] The trial court and the parties appear to have referred to Irvin's UMDDA request as a detainer.

court." Defense counsel didn't challenge the People's waiver argument; instead, defense counsel responded, "I can let the [c]ourt know I have spoken with [Irvin]. He is — he will withdraw the detainer today to make this issue moot." The court responded, "Okay. The [c]ourt accepts the request to withdraw the detainer, and there's no longer a detainer in this case." Though present, Irvin didn't object to the withdrawal of his UMDDA request, nor did he express any concern or ask for clarification. The court then set the preliminary hearing.

¶ 7     At the preliminary hearing, the court confirmed with defense counsel that the UMDDA request was no longer pending. Likewise, at the arraignment, the court again confirmed with defense counsel that the UMDDA request had been "withdrawn" at the May 2019 status conference and was "not an issue." Irvin was present at both hearings and, as before, remained silent.

¶ 8     Years later, Irvin elected to proceed pro se (with the assistance of advisory counsel) because, in his view, defense counsel had withdrawn his UMDDA request without his permission. Irvin then filed several pro se motions seeking, among other things, to dismiss his charges for violation of the UMDDA.

¶ 9    In August 2021, the court held a hearing to resolve Irvin's pro se motions.  At the hearing, Irvin argued that defense counsel's withdrawal of his UMDDA request did not amount to a valid waiver because neither the trial court nor defense counsel had fully advised him of his rights under the UMDDA.  In turn, because his waiver was invalid, Irvin asserted that the UMDDA speedy trial period had lapsed, and the court was required to dismiss his charges for lack of jurisdiction.

¶ 10    The court denied the motions to dismiss, finding that (1) Irvin was present when defense counsel withdrew the UMDDA request; (2) counsel represented on the record that she had conferred with Irvin about the withdrawal; (3) the court accepted the withdrawal; (4) Irvin didn't object to the withdrawal or say he didn't understand; and (5) through counsel, Irvin gave an express, on-the-record, fully advised waiver of his right to a speedy disposition.

¶ 11    Several months later, Irvin requested counsel to represent him.  The court appointed alternate defense counsel.  Counsel then filed another motion to dismiss the charges for violation of the UMDDA, again arguing that Irvin hadn't waived his UMDDA request

because neither the trial court nor defense counsel fully advised him, on the record, of his UMDDA rights.

¶ 12     In a written order, the court denied the motion. Incorporating its oral ruling on Irvin's pro se UMDDA motions, the court again concluded that defense counsel's withdrawal of the UMDDA request in Irvin's presence at the May 2019 status conference waived Irvin's UMDDA rights, including his right to a "formal advisement."

¶ 13     In early 2023, a jury convicted Irvin of two counts of menacing and one count each of attempted first degree murder, attempted second degree murder, attempted first degree assault, aggravated robbery, and aggravated motor vehicle theft. After finding that the People had proved six habitual criminal counts, the court sentenced Irvin to ninety-six years in prison.

## II.     The UMDDA

¶ 14     Irvin contends that the trial court erred by finding that he had waived his UMDDA request because (1) only Irvin, not defense counsel, had the right to waive his UMDDA request; and (2) the trial court did not fully advise Irvin of his UMDDA rights. According to Irvin, because his waiver was invalid, the UMDDA's speedy trial

period lapsed, and the court lost jurisdiction over his case.  We disagree.

### A. Legal Authority and Standard of Review

¶ 15    The UMDDA's primary purpose is to give prisoners a mechanism for insisting on the speedy and final disposition of untried charges.  *People v. McKimmy*, 2014 CO 76, ¶ 22.  It allows "[a]ny person who is in the custody of the department of corrections" to "request final disposition of any untried indictment, information, or criminal complaint pending against him in this state."  § 16-14-102(1), C.R.S. 2024.  Once the defendant makes such a request, the trial court has 182 days to bring the defendant to trial.  § 16-14-104(1), C.R.S. 2024.  If it does not, the court loses jurisdiction and must dismiss the charges with prejudice.  *Id.*; *see also McKimmy*, ¶ 22.

¶ 16    But a defendant who has made a request under the UMDDA may later waive his right to trial within 182 days "by express waiver on the record after full advisement by the court."  § 16-14-104(2); *see also People v. Yakas*, 2019 COA 117, ¶ 13.

¶ 17    To the extent Irvin's argument requires us to interpret the UMDDA, statutory interpretation presents a legal question that we

review de novo. *McKimmy*, ¶ 19; *Yakas*, ¶ 14. Likewise, we review de novo whether a defendant has waived his rights under the UMDDA. *Yakas*, ¶ 14.

### B. Defense Counsel Can Waive Statutory Rights

¶ 18    As we understand it, Irvin contends that his attorney could not waive his speedy trial right under the UMDDA because the statute refers only to the "prisoner" (here, Irvin) but omits the word "attorney" or "lawyer."

¶ 19    We reject this argument for two reasons. First, it's unsupported by the plain language of the UMDDA, which only requires an express waiver, not a waiver made personally by the defendant. *See* § 16-14-104(2); *Yakas*, ¶ 31.

¶ 20    Second, the UMDDA's statutory speedy trial right is not among the limited class of trial rights — such as the right to testify in one's own defense and the right to a jury trial — that a defendant must personally waive. *Compare Yakas*, ¶ 30 (UMDDA speedy trial right is not a "fundamental constitutional right[] requiring personal waiver by a defendant"), *and State v. McCleary*, 2025 ND 24, ¶ 10 (same), *with People v. Quintero-Amador*, 2015 CO 59, ¶ 18 (right to testify in own defense can only be waived by the defendant), *and*

7

*People v. Walker*, 2014 CO 6, ¶ 16 (right to jury trial can only be waived by the defendant).

¶ 21    We therefore conclude that Irvin's defense counsel could validly waive his statutory UMDDA rights.

### C.    Defense Counsel Waived the UMDDA's Required Advisement

¶ 22    In relevant part, section 16-14-104(2) states:

> Any prisoner who requests disposition pursuant to section 16-14-102 may waive the right to disposition within the [182-day timeframe] *by express waiver on the record after full advisement by the court.*

(Emphasis added.)  Relying on the italicized portion above, Irvin insists that defense counsel could not waive his UMDDA request "without an advisement by the court."

¶ 23    A division of this court considered and rejected this argument in *Yakas*.  There, the defendant filed a pro se request under the UMDDA.  *Yakas*, ¶ 4.  Later, defense counsel informed the trial court that the defendant planned to withdraw this request.  *Id.* at ¶ 5.  At the next hearing and in the defendant's presence, the court confirmed with defense counsel that the defendant wanted to withdraw the request.  *Id.* at ¶ 7.  After defense counsel declined

"any further advisement on the record," the court found that the request had been withdrawn. *Id.*

¶ 24    On appeal, the division held that defense counsel could waive the UMDDA's advisement requirement. *Id.* at ¶ 34. It then concluded that because counsel had withdrawn the request under the UMDDA in the defendant's presence — and the defendant didn't object or otherwise disagree — counsel had waived the UMDDA's advisement requirement. *Id.* at ¶¶ 34-38.

¶ 25    *Yakas* largely settles the matter. Indeed, like the defendant in *Yakas*, Irvin was present when defense counsel withdrew his UMDDA request, and he didn't object or otherwise express any confusion or disagreement. Instead, even after acknowledging in writing that he was aware of and understood his UMDDA rights, Irvin remained silent. And, in some ways, the facts here are more compelling than in *Yakas* because — unlike the withdrawal in *Yakas* — Irvin's defense counsel represented that she had "spoken with" Irvin and that "he will withdraw" the UMDDA request "today."[2]

---

[2] Also different than *Yakas*, Irvin had two more opportunities to object to the withdrawal when the court raised the UMDDA request at the preliminary hearing and the arraignment. But again, Irvin voiced no objection.

Because Irvin was aware of his UMDDA speedy trial right — the only right the UMDDA provides — and because counsel withdrew that right after conferring with Irvin, it's not clear what advisement Irvin believes the court should have given.

¶ 26    Under these circumstances, defense counsel's broad and express withdrawal of Irvin's UMDDA request waived Irvin's statutory rights under the UMDDA, including the speedy trial and advisement rights. *See Yakas*, ¶¶ 34-38; *see also New York v. Hill*, 528 U.S. 110, 114 (2000) (explaining that waiver is generally presumed available for both constitutional and statutory rights and that the "most basic rights of criminal defendants are . . . subject to waiver") (citation omitted); *Finney v. People*, 2014 CO 38, ¶ 16 ("Counsel may waive a defendant's statutory rights.").[3]

¶ 27    To the extent Irvin maintains that *People v. Carr*, 205 P.3d 471 (Colo. App. 2008), requires a different result, we disagree. In *Carr*, the division concluded that the defendant did not waive his UMDDA

---

[3] Irvin seems to suggest that, without the advisement, the court had no way to determine whether his waiver was voluntary. As best we can tell, Irvin never raised this issue to the trial court. Regardless, he doesn't develop this claim, so we decline to address it. *See People v. Duran*, 2025 COA 34, ¶ 14 n.3 (appellate courts don't address undeveloped arguments).

rights by agreeing to a trial date beyond the statutory speedy trial deadline without any discussion of the UMDDA. *Id.* at 474. Thus, *Carr* dealt with an implied waiver, not the express waiver through counsel that occurred here.

¶ 28 For these reasons, we conclude that defense counsel validly waived Irvin's UMDDA rights, including his right to an advisement under section 16-14-104(2).

### III.   Disposition

¶ 29 We affirm the judgment.

JUDGE BROWN and JUDGE SCHOCK concur.